IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Scott McKinley Parker, ) | C/A No. 0:13-153-DCN-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Scott McKinley Parker ("Parker"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further consideration as explained below.

## ADMINISTRATIVE PROCEEDINGS

In October 2010, Parker applied for DIB, alleging disability beginning June 1, 2001. Parker's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 30, 2011, at which Parker, who was represented by Gisela Iglesias, Esquire, appeared and testified. At the beginning of this hearing,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



Parker amended his onset date to August 2, 2010. After hearing testimony from a vocational expert, the ALJ issued a decision on August 26, 2011 finding that Parker was not disabled. (Tr. 26-34.)

Parker was forty years old on his amended alleged disability onset date. (Tr. 48.) He has a high school education and past relevant work experience as a booking officer, a customer service representative, an account credit clerk, and an automobile salesperson. (Tr. 50, 94.) In his application, Parker alleged disability due to high blood pressure, bipolar disorder, and social anxiety. (Tr. 222.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 2, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder, panic disorder with agoraphobia, obstructive sleep apnea and fibromyalgia (20 CFR 404.1520(c)).

    \*   \*   \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).

    \*   \*   \*

5. . . . [T]he claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except that he is to avoid more than frequent balancing, stooping, kneeling, crouching, crawling or climbing of stairs or ramps; he is to avoid all exposure to extremes of temperature, humidity, pulmonary irritants or climbing of ropes, ladders or scaffolds; and he is restricted to simple, routine, repetitive tasks with no more than frequent interaction with others and can concentrate and persist for two hour segments.

    \*   \*   \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

    \*   \*   \*



    7.      The claimant was born . . . [in] 1970, and was 31 years old,[2] which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563).

    8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

    9.      Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.     Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 404.1569 and 404.1569(a)).

                                                         \*    \*    \*

    11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2010 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 28-33.) Parker submitted additional evidence to the Appeals Council, which denied his request for review on June 13, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); <u>see also</u>

---

[2] The ALJ appears to have arrived at this age based on Parker's original alleged onset date of June 1, 2001. The court observes that Parker was forty years old on his amended onset date of August 2, 2010, which is still defined as a younger individual.



Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[3]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[3] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Parker raises the following issues for this judicial review:

Point I:     Mr. Parker is *Per Se* Disabled Under Medical Listing 12.04

Point II:    The ALJ Failed to Follow the Treating Physician Rule

Point III:   The ALJ Failed to Properly Evaluate Mr. Parker's Credibility

Point IV:    The ALJ Relied on Flawed Vocational Expert Testimony[.]

(Pl.'s Br., ECF No. 9.)

PJG

**DISCUSSION**

Parker presents several issues on appeal. For the reasons that follow, the court agrees that remand is warranted based on the ALJ's analysis of Dr. Raul Soto-Acosta's opinions. Specifically, based on a review of the record and the ALJ's decision, the court cannot say that the ALJ's decision to give little weight to Dr. Soto-Acosta's opinions is supported by substantial evidence, and this decision impacts several steps of the sequential process, including the Listings analysis. Therefore, the court addresses this issue first.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that
>
>> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

The record reveals that Dr. Soto-Acosta, Parker's treating psychiatrist, began treating Parker on November 29, 2010 and issued two opinions regarding Parker's limitations. On March 23, 2011, Dr. Soto-Acosta completed a Psychiatric/Psychological Impairment Questionnaire, which included diagnoses of bipolar I disorder, rapid cycling; and panic disorder with agoraphobia. (Tr. 574-81.) Dr. Soto-Acosta indicated that Parker's GAF score was then 42 and his lowest score during the past year was 51 with a "guarded" prognosis. (Tr. 574.) Dr. Soto-Acosta identified the following clinical findings to support his diagnoses: poor memory, sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, manic syndrome, and persistent irrational fears. (Tr. 575.) He stated that Parker's primary symptoms were mood swings, rapid cycling, anxiety, and a poor attention span. (Tr. 576.) Dr. Soto-Acosta opined that Parker was markedly limited in his capacity



to perform the following activities: remembering locations and work-like procedures; understanding, remembering, and carrying out detailed instructions as well as one- or two-step instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; sustaining ordinary routine without supervision; working in coordination with or proximity to others without being distracted by them; making simple work related decisions; completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in the work setting; traveling to unfamiliar places or using public transportation; and setting realistic goals or making plans independently. (Tr. 577-79.) Dr. Soto-Acosta indicated Parker was only moderately limited in his abilities to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to be aware of normal hazards and take appropriate precautions. (Tr. 578-79.)

Dr. Soto-Acosta also indicated that due to increased anxiety Parker experienced episodes of deterioration or decompensation in work or work-like settings that caused him to withdraw from the situation and/or experience an exacerbation of signs and symptoms. (Tr. 579.) Further, Dr. Soto-Acosta stated that Parker's medications can cause sedation, that to his knowledge Parker is not a malingerer, that his depression can cause his pain to increase, and that he expected Parker's impairments to last at least twelve months. (Tr. 579, 580.) Dr. Soto-Acosta indicated that Parker



was incapable of handling even low stress work due to the severity of his bipolar disorder, his impairments were likely to cause "good days" and "bad days," and the symptoms and limitations described in the questionnaire were present since August 2010. (Tr. 580, 581.) Finally, Dr. Soto-Acosta estimated that Parker would be absent from work, on average, more than three times a month as a result of his impairments or treatment. (Tr. 581.)

On June 9, 2011, Dr. Soto-Acosta issued another opinion by letter, which stated that he treated Parker since November 2010 for bipolar type II disorder, rapid cycling; attention deficit disorder; panic disorder with agoraphobia; and social anxiety disorder. (Tr. 675.) Dr. Soto-Acosta indicated that Parker's conditions had proven to be resistant to multiple medications in the past. Dr. Soto-Acosta stated that Parker was compliant with his treatment, and continued to experience chronic memory problems, low energy, poor concentration, and isolation. Dr. Soto-Acosta stated that Parker's medications helped "somewhat," but also caused sedation, and opined that his prognosis for Parker's recovery was reserved and that Parker was disabled for at least 12 months. (Id.)

The ALJ found that Dr. Soto-Acosta's opinions were entitled to little weight. In reaching this conclusion, the ALJ stated

> [t]he opinions of Dr. Acosta that the claimant had marked limitations of functioning were rendered immediately after a decline in the claimant's functioning, due to bereavement. Furthermore, Dr. Acosta, who only began treating the claimant in November 2010, speculated that the claimant's symptoms had been present since August and there is no evidence how he arrived at that conclusion. His opinion is undermined by his own notes showing GAF scores of 55, 60 and 70, which do not indicate severely disabling conditions. The opinions of Dr. Acosta were not consistent with the weight of the evidence, and they likewise have been given little weight.

(Tr. 32.) Parker challenges each of these reasons.



Upon review of the record and the parties' briefs, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. As stated above, 96-2p requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5. It is clear that Dr. Soto-Acosta has examined Parker, and is in fact his most recent treating specialist, which are pertinent factors in weighing his opinions. See Johnson, 434 F.3d at 654; see also 20 C.F.R. § 404.1527. However, in weighing whether Dr. Soto-Acosta's opinions are supported or consistent with the record, the ALJ mentions the GAF scores as determined by Dr. Soto-Acosta and generally states that his opinions "were not consistent with the weight of the evidence." (Tr. 32.) The ALJ fails to further specify what evidence supports such a critical findings in weighing this treating physician's opinion, especially considering the other factors mentioned above weighing in favor of the opinion. Notably, one of the few specific reasons offered by the ALJ in weighing whether Dr. Soto-Acosta's opinion is supported by the record are Parker's GAF scores.[4] This court has previously agreed with the Commissioner that while GAF scores are not alone a permissible indicator of disability and in fact have been discontinued in the DSM-V which was published in 2013, the ALJ is not precluded from considering them in determining whether a treating physician's opinion is consistent with his own treatment notes when evaluating the reliability of the physician's opinion regarding a claimant's level of functioning. See

---

[4] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33.



also Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"). Accordingly, the court cannot say that the GAF scores alone constitute sufficient evidence to support the ALJ's conclusion that Dr. Soto-Acosta's opinions were not consistent with the weight of the evidence. The court finds that the ALJ's findings regarding Dr. Soto-Acosta's opinions are insufficient to determine if his conclusion that they are entitled to little weight is supported by substantial evidence.

Accordingly, based on the record before the court, the court is constrained to remand this issue for further explanation and review of Dr. Soto-Acosta's opinions and continue with evaluation of Parker's disability application, if necessary.[5] Furthermore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Parker's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Parker may present his remaining arguments on remand.

---

[5] The court expresses no opinion as to whether further consideration the evidence discussed above in conjunction with the evidence already discussed by the ALJ should lead to a finding that Dr. Soto-Acosta's opinions are entitled to controlling weight. Further analysis and discussion may well not affect the ALJ's conclusion on this point.



**RECOMMENDATION**

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 22, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).